IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

ANGELA MARIE LADD                                                PLAINTIFF

v.                              No. 2:13-CV-015-DPM

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                   DEFENDANT

ORDER

Ladd is a young woman who claims she can't work; she was twenty seven at the time of her hearing. She's had only one job — at age twenty one for eight months at a daycare facility. She has sought disability benefits since she was twenty three. This case considers her second application for benefits. Ladd says her depression, anxiety, learning disability, and asthma are disabling. The Commissioner's ALJ found that Ladd has severe impairments: panic disorder with agoraphobia, borderline intellectual functioning, depression, and seizure disorder. The ALJ also concluded, though, that she can do simple, unskilled work with limited contact with supervisors and coworkers, and no contact with the public. Ladd disagrees and appeals. This Court must decide whether the decision is supported by substantial evidence on the record as a whole. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

Ladd argues that she is disabled due to mental retardation because she

has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C (2012) (specifying one way of meeting the listing for mental retardation). IQ scores must be valid to count in proving disability. The ALJ concluded Ladd does not have a valid IQ score of 60 through 70. Substantial evidence supports that conclusion, *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998), because "a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning," *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001). Ladd has two sets of IQ scores. The first set (from February 2009) flowed from her first application for disability benefits; the second set (from December 2010) from her second application. The 2009 scores fall outside the required range for mental retardation; the 2010 scores are within the required range. *Compare* Tr. 242 (2009 — verbal 74, performance 84, full scale 77), *with* Tr. 365 (2010 — verbal 64, performance 77, full scale 67).

The ALJ rejected the second set of scores because "there is no evidence of any intervening event to explain this drastic change in scoring." During the

almost two years between the two rounds of IQ testing, Ladd saw a therapist, took psychotropic medication, and reported improvement with treatment. She experienced anxiety in various situations involving boyfriends, friends, neighbors, and family, but nothing happened that would have affected her intellectual functioning.

Ladd's judgment and insight remained good during her difficulties. She reported hallucinations once; she denied having any such problem, however, on many other occasions. She acknowledged that she was not using coping skills learned in therapy. The second examiner thought the second scores were valid, but reported that Ladd does not meet the diagnostic criteria for mental retardation. No evidence rebuts the presumption that Ladd's IQ remained stable between the first time her IQ was tested and the second time. Moreover, no evidence shows the "onset of the impairment before age [twenty two]." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (2012). A reasonable mind would accept the absence of an intervening event as adequate to support the ALJ's conclusion that the second scores are not valid.

Ladd's argument about being unable to work at all fails because of the ALJ's numerous restrictions. The restrictions appropriately responded to

Ladd's borderline intellectual functioning and her difficulties with anxiety around crowds. Both psychological examiners thought that Ladd can cope with the typical mental and cognitive demands of basic work-like tasks. No doubt Ladd's intellectual functioning is limited — for example, her grandfather testified that he couldn't teach her how to make change. But the ALJ's many restrictions adequately accounted for Ladd's many limitations.

When questioned about available work, a vocational expert identified two unskilled jobs within the ALJ's parameters: store laborer and marker. This testimony created no conflict with the Dictionary of Occupational Titles because the ALJ did not limit Ladd to simple one-step or two-step instructions or otherwise indicate she can only work at the Dictionary's Level 1 of reasoning. *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). Both jobs require common sense — the person must carry out detailed but uninvolved instructions; there are a few concrete variables in standardized situations. Neither job exceeds Ladd's ability. Ladd argues in passing about her weight and asthma. No evidence, however, shows these conditions erode her ability to work. The Court affirms.

So Ordered.

*[signature]*

D.P. Marshall Jr.
United States District Judge

*18 February 2014*